UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON CORBETT,<br><br>Defendant. | No. 2:19-cr-00107 KJM<br><br><br><br>ORDER |

Defendant Jason Corbett's motion for pretrial discovery, ECF Nos. 1300 and 1303, came on for hearing before the undersigned on January 25, 2023. The motion has been fully briefed. See ECF Nos. 1368 (opposition); 1396 (reply). Kresta Daly and Richard Novak appeared for Mr. Corbett; Assistant United States Attorneys Jason Hitt and Ross Pearson appeared for the United States. Codefendants Ronald Dean Yandell, Patrick Brady, and Brant Daniel have all joined the motion (ECF Nos. 1306, 1310 and 1362 respectively); they were present at the hearing with counsel.[1]

I.   BACKGROUND

Defendants have been charged with participating in a RICO conspiracy in violation of 18

---

[1] Following the hearing, the undersigned heard an *in camera* offer of proof from counsel for Mr. Corbett on the matters as to which the opportunity for such an offer was requested in the defense briefing (see ECF No. 1396 at 10-43, items 7-10, 14, 15, 18, 24, 29, 30 and 31). The court confirmed that the defense has a factual basis, from its own investigation, for the assertions of fact made in support of all theories of materiality there asserted.

1

U.S.C. § 1962(d).  The government alleges in relevant part that defendants Corbett, Yandell, Brady and Daniel are Aryan Brotherhood ("AB") members who orchestrated drug trafficking and murders while incarcerated in California state prisons.  Details of the charges, and the procedural history of the case, are familiar to the parties and need not be repeated here.

II.  STANDARDS GOVERNING DISCOVERY IN CRIMINAL CASES

Under Federal Rule of Criminal Procedure 16, the government must provide a criminal defendant with discovery of materials which are "within the government's possession, custody or control" and which are "material to preparing the defense."  Rule 16(a)(1)(E), Fed. R. Crim. P.  As the Ninth Circuit has stated:

> Rule 16 permits discovery that is relevant to the development of a possible defense. United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984). Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense. See Little, 753 F.2d at 1445; Cadet, 727 F.2d at 1466-68.

United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990).  See also United States v. Zone, 403 F.3d 1101, 1107 (9th Cir. 2005).

With respect to the defendant's burden of making a prima facie showing of materiality in support of the request for discovery under Rule 16, it has been observed as follows:

> The materiality requirement…is not a "heavy burden"; rather, evidence "is material as long as there is a strong indication that … the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" United States v. Liquid Sugars, Inc., 158 F.R.D. 466, 471 (E.D. Cal. 1994). "[R]equests which are designed to generally cast for impeachment material…are not material. Such requests are instead simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful." Id. at 472.

United States v. Bergonzi, 216 F.R.D. 487, 501 (N.D. Cal. 2003).  Nonetheless, where the government has shown that complying with a criminal defendant's discovery request under Rule 16 would be unduly burdensome, "it is incumbent on the district court to consider the government

interests asserted in light of the materiality shown." Mandel, 914 F.2d at 1219 (citing United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984)). In the absence of the required factual showing from the defense, there is no basis upon which the court to exercise any discretion it has to order discovery. Id.

### III. Threshold Issues

The United States objects to most of defendant's requests on multiple grounds, asserting in broad terms that the documents and records sought are not material within the meaning of Rule 16, not in the government's possession, protected from disclosure by the Jencks Acts, and/or protected by the "informer's privilege" recognized in Rovario v. United States, 353 U.S. 53 (1957).

#### A. "Possession, Custody or Control"

Documents and tangible things are in the government's possession if the prosecutor "has knowledge of and access to the documents sought by the defendant." United States v. Santiago, 46 F.3d 885, 893 (9th Cir. 1995). Here the government asserts that it is not in actual or constructive possession of much of the material at issue, specifically documents from various inmate files and investigative records of the California Department of Corrections ("CDCR") and other CDCR-generated materials. On a previous discovery motion brought by co-defendant Brant Daniel, which largely sought materials that by their nature would have originated with CDCR, Judge Mueller found that the United States "likely" possessed the particular information at issue. ECF No. 824 at 14. The government had not disputed its possession of the materials sought, and Judge Mueller did not purport to address the broader question—which had not been presented— whether materials *not* in the physical possession of the United States but held by CDCR were nonetheless discoverable as within the government's constructive possession. See id.[2] Accordingly, the undersigned rejects Corbett's suggestion that the government's constructive possession of *all* CDCR materials related to the incidents and individuals that are involved in or

---

[2] Similarly, in deciding a subsequent motion, Judge Mueller noted that she "assume[d] the government effectively 'possesses' *some* information that is in control of state prison officials" and that "the United States does not argue otherwise." ECF No. 1275 at 3 (emphasis added).

3

related to this case, however indirectly, has been determined by Judge Mueller and is "law of the case." See ECF No. 1396 at 2.

On the present motion, the United States affirmatively represents that it does not have "possession, custody or control" of various materials sought by defendant. The government has presented the declaration of Heather Heckler, a Deputy Attorney General for the State of California, who avers that "it is standard practice" when federal authorities investigate crimes committed by CDCR inmates "for officials at the U.S. Attorney's Office to use legal process to obtain documents in the possession of CDCR." ECF No. 1368-1 at 1-2. Ms. Heckler declares further:

> Typically, CDCR does not release documents to the U.S. Attorney's Office without a subpoena *unless the documents are directly related to the investigation into the criminal conduct that is being charged*. As such, requests for documents for non-defendants and documents from a defendant's file that are unrelated to the charged incidents would not be given to the U.S. Attorney's Office without a subpoena. Moreover, when confidential documents are provided to the U.S. Attorney's Office they are often redacted for safety and security reasons.

Id. at 2 (emphasis added).

Defendant relies on the principle that the government is presumed to have possession, custody or control over investigative materials held by "closely connected investigative agencies." See United States v. Bryan, 858 F.2d 1032, 1035-36 (9th Cir. 1989). Defendant cites Santiago, supra, for the proposition that "an agency's files are deemed within the possession of the prosecution… if the agency contributed to the investigation." ECF No. 1303 at 21. This formulation goes too far, for reasons explained below. The government, on the other hand, cites Santiago and United States v. Aichele, 941 F.2d 761 (9th Cir. 1991), for the proposition that federal prosecutors are never deemed to have access to material held by state agencies. ECF No. 1368 at 12. This formulation is also misleading.

Santiago involved the prosecution of a federal inmate for the murder of another inmate in a U.S. penitentiary. Defendant sought discovery of inmate witnesses' prison files. The Ninth Circuit found in relevant part that the BOP records were in the possession of the government because the prosecutors had knowledge that such files existed and had access to them. Santiago,

4

46 F.3d at 893-894. It was significant to the analysis that the BOP—unlike CDCR—is a federal agency, and one which is structurally related to the United States Attorney's Offices. Id. at 894. The Court of Appeals clarified that an agency's participation in an investigation is a sufficient, but not a necessary, factor to show constructive possession by the prosecution. Id. at 893. The underlying standard is "knowledge and access to" the documents. Id. at 894.

In Aichele, a drug conspiracy case that was not based on conduct in a prison, defendant claimed a Brady violation for failure to disclose impeachment material in the state prison record of a government witness. The court rejected this argument summarily, noting that the CDCR file was under the exclusive control of California officials. Aichele, 941 F.2d at 764. There is no reference in the opinion to any CDCR involvement in the investigation, or any suggestion that federal prosecutors had knowledge of or ready access to the files. Accordingly, Aichele stands for no more than the obvious point that state agency records are not within the constructive possession of federal prosecutors just because they pertain to a witness. The Santiago court distinguished Aichele from its case as "premised on the consistent Ninth Circuit rule that federal prosecutors are never deemed to have access to materials held by state agencies." 46 F.3d at 894.[3] This statement (which is mere dicta) does not purport to obviate the knowledge and access standard, or the rule that agency involvement in an investigation satisfies that standard as to materials within the scope of the investigation. Those rules, clarified in Santiago itself, apply to federal and state agencies alike.

The court now turns to the dispute before it. While knowledge and access are presumed where an agency participates in the investigation of the defendant, United States v. Cano, 934 F.3d 1002, 1023 (9th Cir. 2019), such knowledge and access is necessarily limited to materials that come within the scope of that investigation. The fact that CDCR has participated in the investigation of the RICO conspiracy charged in this case does not bring any and all CDCR records of interest to the defense within the government's constructive possession for Rule 16

---

[3] Taken in context, the undersigned interprets this statement as recognizing that there is never *presumed* access to state agency materials. The Santiago court was distinguishing the relationship between BOP and the U.S. Attorney's Office from that between agencies of different and independent sovereigns.

purposes; discoverability is limited by the scope of CDCR's involvement in the investigation.

Here, the court finds that the United States has knowledge and access to, and thus constructive possession of, documents and tangible things generated by or gathered from any source (including non-defendant inmate files and internal records that predate the investigation) by CDCR as part of its response to the investigation of this case. The Heckler declaration is consistent with this conclusion, as it acknowledges that information "directly related to the investigation" is freely shared with federal authorities without the need for a subpoena. Accordingly, documents and materials generated or gathered by CDCR as part of its response to the investigation of this case will be deemed to be in the possession of the United States whether or not they are in the physical custody of the prosecutors. The court finds, however, that CDCR records and materials that have neither been provided to the United States (with or without subpoena), nor identified by CDCR as related to the investigation into the federally-charged offenses, are not within the possession, custody or control of the government within the meaning of Rule 16.

Accordingly, to the extent the undersigned finds below that Corbett seeks information that is material within the meaning of Rule 16 and is not otherwise protected from disclosure, the government will be ordered to produce any materials already in its possession, to which is has access without a subpoena, or which otherwise fall within the parameters of its constructive possession as set forth above. However, it is not the job of federal prosecutors to obtain materials from CDCR for defendants' use when those documents are outside the universe of CDCR documents identified by that agency as related to the investigation of this alleged RICO conspiracy.

B. <u>Jencks Act</u>

The United States argues that many of defendant's requests seek statements that are protected from pretrial disclosure by the Jencks Act. While the government may withhold from its pretrial production any witness statements as defined in 18 U.S.C. § 3500(e), Jenks does not apply to documents that refer to, summarize, or paraphrase information provided by individuals

who may become witnesses.[4] Many of the reports and investigative materials sought by this motion—such as the 2006, 2012 and 2018 CDCR reports regarding defendant's Aryan Brotherhood affiliation that are referenced in a rules violation report previously provided in discovery, see ECF No. 1396 at 45—appear to fall into the latter category.  Such documents are accordingly discoverable subject to the limitations and exclusions specified herein.  Where the government is here ordered to produce responsive documents, the exception for Jencks materials shall be construed narrowly to permit the withholding only of statements signed or expressly adopted by an anticipated or prospective trial witness, or witness statements that were contemporaneously recorded or documented substantially verbatim.  18 U.S.C. § 3500(e).

      C.   Informer's Privilege

The government raises multiple objections that the defense seeks information from confidential sources that is protected by the informer's privilege recognized in Rovario v. United States, 353 U.S. 53 (1957).  As the Supreme Court recognized in Rovario itself, the privilege—which is held by the government, not by the informer—is not absolute.  It must give way when the contents of a confidential communication or the identify of the informant is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause…"  Id. at 61.  Disclosure may be ordered following a balancing of the public interest in protecting the flow of information (which necessarily includes considerations of safety for informants) against the individual's right to prepare his defense.  See id. at 62.  This balancing cannot be conducted in a vacuum.

Here, no specific documents including confidential information or identifying confidential informants have been identified as withheld pursuant to Rovario.  Instead, the government argues broadly that it should not have to respond to discovery requests that may encompass information

---

[4] In other words, the Jencks Act does not apply broadly to documents or other materials "that originate from evidence provided by prospective witnesses," as the government puts it.  See, e.g., ECF No. 1368-2 at 4 (response to Request 11).  It applies only to written statements signed or otherwise adopted by the witness, or witness statements that were contemporaneously recorded or documented substantially verbatim.  18 U.S.C. § 3500(e).  Such statements may be produced at trial after a witness testifies, for purposes of cross-examination, but not before trial.  § 3500(a)&(b).

subject to the privilege. Without knowing the context of any particular assertion of Rovario, the court cannot evaluate whether the privilege is overcome. Accordingly, to the extent that the court orders disclosure of documents and materials below, the government will be permitted to redact the names and identifying information of individuals it believes are covered by the privilege recognized in Rovario, without prejudice to future defense motion(s) to compel the disclosure of identity. Redactions may include the content of information provided by informants only when, and to the extent, that content would necessarily reveal identity.

### IV.  Documents Related to the Diaz Murder Conspiracy

Requests 1 through 10 relate to the alleged conspiracy to murder Paul Diaz, which is charged as a special sentencing factor in relation to Count One of the Superseding Indictment and which also forms the basis of Count Four. See ECF No. 1375 (Superseding Indictment) at 9-10 (Count One, Racketeering Conspiracy, special sentencing factor 6), 12-13 (Count Four, Conspiracy to Commit Murder in Aid of Racketeering). The indictment does not charge any of the defendants with actually killing Diaz. The government acknowledges that the murder of Diaz in 2019 was committed by a third party unrelated to this case. What is alleged in the indictment is a conspiracy between defendants Corbett and Yandell, lasting approximately two days in 2016, to kill Diaz—a conspiracy that did not accomplish its goal, but nonetheless constitutes a criminal act.

Defendant seeks information relevant to his theory that Diaz was killed as the result of a conspiracy independent of that charged in this case. Evidence of an independent conspiracy by others to murder Diaz, even one that overlapped chronologically with the conspiracy alleged against Corbett and Yandell, would not provide a defense to Count Four or materially undermine the sentencing factor alleged in support of Count One. Requests 1 through 10 are accordingly denied for lack of adequate materiality.

### V.  Documents Related to the Murder of Doug Maynard

Requests 11 through 20 relate to the murder of Doug Maynard, which is charged as a special sentencing factor in relation to Count One (Racketeering Conspiracy). See ECF No. 1375 (Superseding Indictment) at 10-11. The government's theory is that Corbett ordered Robert

1  "Bobby" Stockton to kill Maynard, in furtherance of AB goals.

2  Request 11 seeks documents indicating that Corbett was an Aryan Brotherhood ("AB") associate and an AB member since approximately 2018. Request 12 seeks documents indicating that Corbett ordered the killing of Maynard in order to gain admission to the AB and/or increase his position in the organization. Such information is material to the defense in this RICO conspiracy case for the reasons that Corbett has articulated; the government's materiality objection is overruled. The government must produce responsive documents in its actual or constructive possession as defined above in section III.A, specifically including IGI and/or STG reports, with the exception of the statements of anticipated or prospective trial witnesses as defined in 18 U.S.C. § 3500(e). Informant identifying information may be redacted subject to future defense motion for disclosure, as specified above in section III.C.

Request 13 seeks documents indicating that Maynard was targeted by the AB because of a debt and a drug problem, as the government has alleged. Defendant has adequately established materiality, as motivation for the hit goes to whether Maynard's murder was in the service of the alleged conspiracy. The government must produce responsive documents in its actual or constructive possession as defined above in section III.A, specifically including IGI and/or STG reports, with the exception of the statements of anticipated or prospective trial witnesses as defined in 18 U.S.C. § 3500(e). Informant identifying information may be redacted subject to future defense motion for disclosure, as specified above in section III.C.

Requests 14 and 15 seek documents regarding Bobby Maynard's AB ties and Corbett's responsibility for ordering the hit. Defendant has adequately established materiality. Responsive documents, including IGI and STG reports, must be produced subject to the same limitations stated above.

The parties have resolved their disputes regarding Corbett's requests 16 and 17. See ECF No. 1396 at 27.

Request 18 broadly seeks documents related to the investigation of Maynard's murder and alleged AB involvement. The government represents that all responsive CDCR documents in its possession have been produced except those constituting Jencks material or protected by the

Rovario privilege. To the extent that the government's interpretation of its "possession, custody or control" and/or the scope of Jencks is more limited than that found by the court in section III of this order, the government will be ordered to supplement its production. The court further finds that defendant has adequately established the materiality of any extant video footage of the homicide, and any IGI and/or STD reports regarding Maynard's gang affiliation or lack thereof. These shall be produced subject to the limitations previously specified.

Request 19 seeks various documents from the Maynard's CDCR central file. The request is overly broad; the government is correct that Corbett may not undertake a "fishing expedition" into the C-file. However, the defense has adequately established materiality as to documents going to Maynard's gang affiliation, past interactions with the defendants, and alleged rules violations or other documentation of incidents involving drugs or violence. The theory of materiality advanced in the briefs has a factual basis that was presented to the undersigned in camera. To the extent that the government is not in actual or constructive possession of these records, as defined above in section III.A, it shall so specify in writing. Any responsive documents shall be produced subject to the limitations previously specified.

Request 20 seeks various documents from Stockton's C-file. As with Request 19, it is overly broad and will be granted only in part. Defendant has adequately established the materiality of STG reports and other documentation going to gang affiliation, records documenting incidents involving drugs or violence, and those addressing interactions with the defendants or Maynard. To the extent that the government is not in actual or constructive possession of these records, as defined above in section III.A, it shall so specify in writing. Any responsive documents shall be produced subject to the limitations previously specified.

VI.     Documents Related to the Murder of Donald Pequeen

Requests 21 through 28 relate to the murder of Donald Pequeen, which is charged as sentencing factor 11 in relation to Count One. See ECF No. 1375 (Superseding Indictment) at 11. The government contends that Corbett and Brady stabbed Pequeen to death in furtherance of the RICO conspiracy.

Request 21 seeks documents indicating that Corbett killed Pequeen in order to increase his

position in the AB.  As with Request 12, and to the same extent, materiality is adequately demonstrated as to defendant's gang-related motivation, and disclosure will be ordered as to IGI and/or STG reports, validation packets and other documents going to Corbett's own AB membership.  The same limitations shall apply.

Requests 22 and 23 are no longer in dispute.  ECF No. 1396 at 34.

Request 24 seeks extensive materials from Pequeen's C-file.  As with the request for materials from the Maynard and Stockton C-files, the request is overly broad as worded.  However, defendant has articulated a defense theory—with a factual basis that was presented in camera—that Pequeen was actively planning to kill Corbett and Brady, and that the fatal incident may have involved self-defense.  Accordingly, materiality has been demonstrated as to documents addressing Pequeen's involvement in acts of violence, weapon manufacturing or possession, and gang involvement while in CDCR custody.  Such documents must be produced subject to the limitations that apply throughout.

Requests 25 through 28 seek wide-ranging materials from the C-files of other inmates.  Roger Brown (Request 25) and Leon Fouts (Request 26) chased Pequeen prior to or during the stabbing; Mike Polson (Request 27) was Pequeen's cellmate; Rodney Utley (Request 28) was also involved in Pequeen's death.  All four inmates were or are considered suspects in Pequeen's death; Fouts and Utley have been charged in Lassen County in relation to the murder.  See ECF No. 1396 at 35-38.  In support of the requests for C-file materials, defendant states in general terms that the documents "can provide additional information related to other suspects and motives" and that "[t]hese documents are material to the defense developing a full understanding of the incident and preparing a defense."  Id.  While the defense desire to review these inmates' files is entirely understandable, this is an insufficiently specific basis for materiality.  It is well established that a defendant's general assertion that information might be material does not entitle the defense to an unlimited search of the government's files.  Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987).  The motion will be denied as to Requests 25 through 28.

VII.     Documents Related to Alleged Drug Conspiracy

Request 29 seeks materials related to the defense of Count 12, Conspiracy to Distribute

and Possess with Intent to Distribute Methamphetamine and Heroin. Specifically, Corbett seeks information from the Central File of inmate Tony Barron, to establish that Barron was part of a different prison gang and was actually responsible for drug transactions attributed to Corbett by the government. Defendant made an offer of proof in camera regarding the factual basis for this theory. This showing supports the materiality of documents related to Barrons' gang affiliation or involvement in drug trafficking while in custody, but does not justify broader review of his central file. To the extent if any that the government is in constructive possession of such materials, they must be produced subject to the limitations specified herein.

### VIII. Other Documents

Request 30 seeks "[a]ll writings from High Desert State Prison detailing which D yard buildings had yard together between October 1, 2015 and October 15, 2016." The justification for this request has to do with the opportunity of a confidential source, identified only as CW-2, to have actually witnessed Corbett's solicitation of Maynard's murder by Stockton, as CW-2 claimed during debriefing. ECF No. 1396 at 39-40. The government objects that this amounts to an admission that the defense seeks the identity of CW-2. Id. Corbett replies that he does not seek the disclosure of a name, only information about which housing units had yard together, id., but this does not undermine the government's point about the defense seeking to identify CW-2 based on the information requested. In any case, the request seeks evidence only tangentially related to the defense theory as to the Maynard murder. The court finds that materiality has not been adequately established. Request 30 will be denied.

Request 31 seeks CDCR and DEA policies and training materials related to the evaluation and determination whether information provided by confidential informants is credible. Defendant believes that no such procedures exist, and he argues that their non-existence will be material to the jury's assessment of the credibility of various confidential witnesses and confidential sources who may testify. ECF No. 1396 at 40-42. This theory does not adequately establish materiality under Rule 16. Request 31 is denied.

Request 32 seeks reports related to the stabbing of Michael Quesenberry while he was housed at High Desert State Prison. The Quesenberry stabbing is not alleged as an overt act or

sentencing factor in this case, but a debriefing informant has claimed that Corbett ordered the attack. Defendant seeks discovery into this uncharged act in order to prepare its case against a potential death sentence and/or to argue against death authorization before the Attorney General. The undersigned agrees with Judge Mueller that information material to death authorization and sentencing in a potentially capital case comes with the scope of Rule 16. See ECF No. 824 at 8-12. Corbett has adequately specified the materiality of the Quesenberry stabbing to the sentencing issues. Production therefore will be ordered subject to the limitations that apply throughout.

IX. CONCLUSION

Accordingly, for the reasons explained above, IT IS HEREBY ORDERED as follows:

1. Defendant's motion for discovery (ECF Nos. 1300 and 1303) is GRANTED IN PART, insofar as the government shall disclose to defendant, subject to the terms of the protective order in place in this case, documents and materials responsive to the requests specified below that are within the actual or constructive possession, custody or control of the government:

    a. Requests 11 through 15, including IGI and/or STG reports, validation packets, and the confidential memoranda and other reports referenced in Exhibit A to defendant's reply brief;

    b. Request 18, including video footage of the Maynard homicide, IGI and/or STG reports, and validation packets;

    c. Request 19, limited to documents going to Maynard's gang affiliation, past interactions with the defendants, and alleged rules violations or other documentation of incidents involving drugs or violence;

    d. Request 20, limited to documents going to Stockton's gang affiliation, past interactions with the defendants or with Maynard, and alleged rules violations or other documentation of incidents involving drugs or violence;

    e. Request 21, including IGI and/or STG reports, validation packets, and other documentation of Corbett's own AB affiliation;

      f. Request 24, limited to documents going to Pequeen's involvement in acts of violence, weapon manufacturing or possession, and gang involvement;

      g. Request 29, limited to documents going to Barron's gang affiliation or involvement in drug trafficking while in custody; and

      h. Request 32.

2. For purposes of this order, the government is deemed to be in constructive possession, custody or control of documents and tangible things generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy, or which CDCR has made or will make available to the United States without a subpoena. If the government's position as to any ordered disclosure is that it does not have possession, custody or control of responsive documents or materials under this definition, it shall so specify in writing.

3. Pursuant to the Jencks Act, the government may omit from its production only witness statements as defined in 18 U.S.C. § 3500(e), and not documents that include summaries or paraphrases of witness statements.

4. The names and other identifying information of confidential sources may be redacted from documents produced pursuant to this order, subject to a future motion for disclosure by defendant. Such redactions may include the content of information provided by informants only when, and to the extent, that the content would reveal the identity of the informant(s);

5. The motion is otherwise denied.

DATED: February 9, 2023

*[signature]*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE